17D02-2210-CT-000048

FEB/10/2022/THU 09:23 AM       DeKalb Superior Court 2

Filed: 10/11/2022 11:32 AM
Clerk
P. 004    DeKalb County, Indiana

EEOC Form 5 (11/09)

Equal Employment Opportunity Commission
Indianapolis District Office
RECEIVED 02/10/2022

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: <br>☐ FEPA<br>☐ EEOC | Agency(ies) Charge No(s):<br>470-2022-01636 |
|---|---|---|

Equal Employment Opportunity Commission and EEOC
_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Amy Schweitzer | 260-908-4508 | |

Street Address: 1302 Prestwick Way, Auburn, IN 46706

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| City of Auburn Indiana | 100+ | 260-925-5430 |

Street Address: 210 E. Ninth Street, PO Box 506, Auburn, IN 46706

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: April 2021    Latest: Dec 27, 2021
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. Complainant Amy Schweitzer alleges that she was discriminated against and terminated on account of her sex (female) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Respondent City of Auburn Indiana is an "employer" for purposes of Title VII.

II. In June of 2016, Complainant was hired by Mayor Norman Yoder to be the Department Head for the Department of Building, Planning & Development ("BPD"). Complainant was one of the first female Department Heads in the history of Auburn. In November of 2019, Michael D. Ley became the new Mayor of Auburn, and in January of 2020, he took office.

III. Complainant alleges that she was the victim of sex discrimination during her employment, and that she was terminated because of her sex in violation of Title VII.

Continued on Page 2

JOLEEN D. JONES, Notary Public
DeKalb County, State of Indiana
Commission Number 691775
My Commission Expires October 8, 2022

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/9/2022   _Amy Schweitzer_
Date       Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

_Joleen D. Jones_   _Joleen D. Jones_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT
_Amy M. Schweitzer_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)
Feb. 9, 2022

Ex. A

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

IV. Examples of the sex discrimination include:

i) the Mayor treating Complainant with hostility, anger, and intimidation where similarly situated male Department Heads were treated with respect;

ii) many of Complainant's meetings with the Mayor were cancelled or subject to late starts, abbreviated meeting times, and/or interruptions;

iii) ALL male Department Heads were invited to the St. Joe Conservation Club by "Mayor's Invite Only" during the City's normal business hours for team building and Complainant, as a woman, was never invited;

iv) Complainant was intentionally excluded from the monthly re-occurring "Mayor's Team Building Event" that occurred during the City's normal business hours as a "Department Head email distribution list" existed, but was never used for the electronic invitation – instead each male Department Head was added to the invitation list, but Complainant was excluded due to her sex;

v) male hourly employees in the BPD were invited to the "Mayor's Team Building Events", and this male was hourly employee, but Complainant, as a female, was once again left out.

V. Complainant protested the sex discrimination and met with the City Attorney, W. Erik Weber, and he recommended that Complainant take up the issue with the Mayor, personally. The Mayor/City of Auburn did not want or consider Complainant to be part of the "Mayor's Team" because of her sex.

VI. Another example of sex discrimination included the Mayor not allowing Complainant to do her job of ensuring public safety when there was a partial building collapse in downtown Auburn. The Mayor prohibited Complainant from doing her job, specifically vacating the partially collapsed building until the integrity of the structure could be verified, unlike the male Department Heads who were permitted to do their jobs without interference.

VII. Ultimately, Complainant was fired on December 27, 2021 because of sex discrimination, complaining about sex discrimination in the workplace, and as retaliation for her commitment to doing the job she was hired to do which was enforcing the City's building codes, dangerous building codes, and zoning and subdivision codes.

VIII. As a direct and proximate result of sex discrimination and retaliation, Complainant lost her job and job-related benefits including income. Complainant suffered lost income, lost benefits, other pecuniary damages, extreme emotional distress, humiliation, embarrassment, inconvenience, high blood pressure, anxiety, depression, and other damages and injuries for which Complainant seeks compensatory damages.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies IF I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

02/09/2022
Date
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

Joleen D. Jones

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Feb. 9, 2022

JOLEEN D. JONES, Notary Public
DeKalb County, State of Indiana
Commission Number 691775
My Commission Expires October 9, 2024

# Myers ♦ Smith ♦ Wallace
LAW OFFICES
809 S. Calhoun Street, Suite 400 ♦ Fort Wayne, IN 46802
(260) 424-0600 ♦ (260) 424-0712

CHRISTOPHER C. MYERS  cmyers@myers-law.com
ILENE M. SMITH  ismith@myers-law.com
NICHOLAS F. WALLACE  nwallace@myers-law.com

February 9, 2022

Mayor Michael D. Ley
City of Auburn Indiana
210 E. Ninth Street
PO Box 506
Auburn, IN 46706

President
Auburn City Council
210 E. Ninth Street
PO Box 506
Auburn, IN 46706

## TORT CLAIM NOTICE

Dear City of Auburn Representatives:

Please be advised that I represent Amy Schweitzer. This letter constitutes Ms. Schweitzer's Tort Claim Notice to you.

### Date, Time, Place and Circumstances of the Loss:

Amy Schweitzer contends that she was terminated out of retaliation for refusing the Mayor's illegal order of allowing a dangerous building (located at 121 S. Main Street, Auburn, Indiana 46706), to remain occupied despite clear and convincing evidence that the building was dangerous with its structural integrity significantly in question after a portion of the building collapsed. Ms. Schweitzer could have been personally liable had any occupant or member of the public been injured after she obeyed this directive from the Mayor. Ms. Schweitzer was so concerned about her liability that she took out a personal insurance policy to protect her in case she incurred personal liability.

Attached is a "Diary of Events" which sets forth the timeline (including important events and names of persons involved) underlying Ms. Schweitzer's claim for retaliatory discharge for objecting to the Mayor's directive that no action be taken on the dangerous building at 121 S. Main Street, Auburn, Indiana 46706. Ms. Schweitzer, as Department Head for the Department of Building, Planning, & Development, was obligated to follow the law with respect to providing for the health and safety of the people of Auburn Indiana, particularly as to dangerous buildings and vacation / securing access of them until the building's structural integrity can be verified. After

Ex. B

the collapsed portion of the building at 121 S. Main Street was demolished and debris cleaned up, new construction was permitted without the required permits being applied for or issued, and Ms. Schweitzer objected to this illegality as well.

On or about December 27, 2021, Mat Snyder provided his resignation to Ms. Schweitzer stating that he could not, in good conscience, continue to work under the Mayor's administration. Later that same day, Ms. Schweitzer was terminated and escorted to her office to clean it out and thereafter leave. Ms. Schweitzer lost her job and job-related benefits, including income, insurance, and other benefits.

In addition to suffering a wrongful/retaliatory termination, Ms. Schweitzer was dismissed from her job as a result of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (which is the subject matter of a separate administrative proceeding with the Equal Employment Opportunity Commission).

**Names of All Persons Involved (If Known):**

    Complainant Amy Schweitzer
    Christopher Schweitzer
    Mayor Mike Ley
    Building Inspector Mat Snyder
    Jeremy Bowers (building owner)
    Jim Ley
    Fire Marshall Ryan Shambaugh
    City Attorney Erik Weber
    Assistant City Attorney Eugene Bosworth
    Sandi Cobble (insurance agent)
    Auburn City Planner Jennifer Barclay

**Damages:**

Ms. Schweitzer suffered the loss of her job, lost income, lost insurance, humiliation, embarrassment, defamation of character, emotional distress, mental anguish, inconvenience, and other similar damages for which Ms. Schweitzer seeks compensatory damages in an amount to be determined by a judge or jury and which is justified by the evidence.

**Residence of Claimant at the Time of the Loss and at the Time of the Filing of This Notice:**

Complainant's address is and was: 1302 Prestwick Way, Auburn, IN 46706.

                        Very Truly Yours,

                        **MYERS ♦ SMITH ♦ WALLACE, LLP**

                        Christopher C. Myers

Amy M. Schweitzer
Diary of Events
McClanahan Claim – Public Safety Responsibilities regarding Partial Building Collapse

| September 23, 2021 - All times are approximate | |
|---|---|
| 8 AM hour | The Department of Building, Planning, and Development (BPD) was made aware of a partial building collapse at 121 S. Main Street, Auburn. The rear portion of the building had collapsed sometime during the night hours. (See Exhibit 1 for Contextual Map and Photos) |
| | Our initial understanding was that the power was disconnected during the collapse. We were told the power is off to the building. Auburn Electric contacts BPD for a status update as there is already an electrician requesting a permit to re-install the permanent service. We hold off on issuing the permit until we have some time to assess the situation. |
| | Building Inspector Mat Snyder heads out to take a look and get some pictures from the exterior. (See Exhibit 2) |
| 9:00 AM hour | There is a regularly scheduled Board of Public Works and Safety Meeting that all Department Heads typically attend. Before/after the meeting I show pictures of the collapsed building to Police Captain Cory Heffelfinger and Fire Chief Mike VanZile. It was the first either of them had heard about it. There may have been others that were part of the conversation or overheard - I don't recall. There's a little buzz in the room about the partial building collapse at the conclusion of the Board of Works meeting. |
| | Meanwhile, Mat Snyder (not at the meeting) begins reviewing Auburn City Code, Chapter 159 Dangerous Buildings. (See Exhibit 3) |
| | BPD Staff pulls a set of building plans for 121 S Main Street from 2018 to try to assess the floor plan, where the damage is, mechanical system locations, and where the potential load bearing walls are. |
| 10:00 AM hour | Mat and I discuss *Chapter 159 Dangerous Buildings* and its applicability to this situation. We believe there is overwhelming evidence that the building fits several criteria that define a Dangerous Building, per Chapter 159. (See highlights in Exhibit 3) We believe it's in the best interest of the occupants and public safety that the building be temporarily vacated until there's an assessment of utility/mechanical system damage and some sort of verification of the structural integrity. |
| | We note there is a small portion of a south brick wall that is unsupported and is an immediately dangerous situation. Mat asserts this portion of the wall must be stabilized or removed immediately. (Circled in red on Exhibit 2) |
| | We do not intend to issue an order to vacate, but rather meet with the building owner (Jermey Bowers) and ask him to vacate the building until the aforementioned assessments are completed. |
| | Mat coordinates with the Fire Marshal who agrees with this direction. |

1

| | |
|---|---|
| | Ironically, 121 S Main houses Bowers Engineering and Mr. Bowers is a structural engineer. Our office works with him frequently. |
| Side Note: The DeKalb County Free Fall Fair starts in 5 days. This heightens our concerns for the situation and the tremendous risk of the building being unlocked and open to the public. In addition, the number of people/amount of foot traffic in the general vicinity increases substantially during fair week. ||
| 11:00 AM hour | I request a meeting with the Mayor about the partial collapse of 121 S Main Street. After 15 minutes of not hearing back, I decide to walk over to the building and am surprised to find the lights on and the front door unlocked. I enter and ask if the building owner, Mr. Bowers, is available. |
| | Mr. Bowers confirmed the collapsing debris pulled power off an adjoining building - 109 S Main Street (not 121 S Main Street). |
| | From the inside front of the building, there is no damage visible except the mopping up of water from the floor near the back of this large main room. |
| | Mr. Bowers and I have a cordial conversation. I let him know we are very concerned about the condition of the building and do not believe it is safe to be occupied. He tells me the Mayor has already been over and talked to him. The Mayor told Mr. Bowers everything is fine. The Mayor owns a lift and is having it brought over to help remove the small portion of the south brick wall that is an immediate danger. |
| | I thank Mr. Bowers for his time and let him know we will follow up. |
| | I had not heard anything from Mayor or Mayor's Office regarding my request for a meeting or anything in general concerning this building collapse, despite my reaching out about it and being the Building Commissioner. |
| | I stop by the Mayor's Office on my way back and request some time to meet with him – at his earliest convenience – about this situation. I'm given a 1 PM appointment. |
| | I confirm Mat Sndyer (Building Inspector); Ryan Shambaugh (Fire Marshal); and Erik Weber (City Attorney) are also able to be present for the meeting. |
| 12:00 Hour | I draft a document for the Mayor to sign that states he accepts responsibility and liability if he makes this decision contrary to Chapter 159 Dangerous Buildings and contrary to our opinions. (I do not have a copy of this. I'm thinking I called it a Release of Liability.) |
| | AE sends email clarifying the address of the collapse is 121 S Main, but the power outage is the adjoining building at 109 S Main. (See Exhibit 4) |

2

| 1:00 PM | I turn on the audio recorder on my phone while we are waiting for the meeting to start. Mat is aware the meeting was being recorded. The recording says it all. The City's code does not matter to the Mayor. Our thoughts and opinions are not welcomed. We are told the problem is with us three, not the building. I do not attempt to have my "Release of Liability" signed. (See Exhibit 5 for recording) |
| --- | --- |
| | It should be noted that when we get to the building, the Mayor meets privately with the owner for about 5-minutes. During that time, I ask City Attorney Erik Weber – if this decision is made over my head, will I still be held responsible if someone is hurt. He deflects the question stating, let's look at the building first. |
| | I request permission to snap a couple of pictures of the inside of the building. That permission is granted as long as I do not release the pictures to the newspaper. The pictures include Mayor Ley, Erik Weber, Ryan Shambaugh, and Jim Ley (the Mayor's brother). The pictures show the condition of the back of the building the day of the collapse. They are taken from inside. (See Exhibit 6) |
| | At some point, Mr. Bowers comments that he's a structural engineer whose building collapsed - in good humor. We appreciate him trying to make light of a very serious situation. |
| | It should be noted that the Mayor's brother, Jim Ley, was hired to work on the building. |
| 3:00 PM hour | Mat, Ryan, and I decompress in my office after our ass-chewing. Ryan states he's never coming to another meeting with us again. We are all flabbergasted. I'm at a loss in how to do my job in this case – protect public safety/public health. |
| | The June 24, 2021 condo collapse in Florida and the devastation/loss of life it caused is at the forefront of my mind. |
| | Mat is informed that other City employees were outside City Hall on the sidewalk and could hear the Mayor yelling at someone (us) in his office during our 1 PM meeting. |
| Evening | I'm not one to air my grievances over social media, but my Bible app verse of the day is one of my favorites, so I share it. With the message – one of my worst days. It wasn't a bad day because I got yelled at. It was a bad day because I was not permitted to do my job – protect the public health and safety – which is something I take very seriously. (See Exhibit 7) |
| Night | I don't sleep well. |
| **September 24, 2021** | |
| AM | I sent an email to Auburn Electric that the City will take no action on the building at 121 S Main Street per the Mayor's orders. Permit will be issued so the electrical service can be restored to 109 S. Main Street. (See Exhibit 8) |
| | We confirm the immediate danger brick wall has been removed; the loose debris is cleaned up; and fencing is in place to maintain some sort barrier for the public and fairgoers. |

| | |
|---|---|
| PM | I update our LOGOS case notes for the day of the collapse. I don't document the 9/23 meeting with the Mayor until October 12 as the entire meeting/conversation makes me nauseous. (See Exhibit 9) |
| Sept 28-Oct 3 | It's Fair Week. We steer clear of the building/area. We continue to discuss the situation internally and how best to deal with it. |
| October | I continue to lose sleep. Every time it is windy or rains hard (which seemed like a lot during the month of October) I think about the rear of this building being completely open to the elements 24 hours a day/7 days a week. The building materials that are now exposed are not intended to be exterior building materials, and with each exposure those materials are broken down more and more. I think about the Florida Condo collapse and how the public blames the building commissioner/building inspector. |
| October 4 / October 11 | I mention the Bowers building during my regular meetings with the Mayor to gauge his attitude. He mentions the word "condemn" again which is not what we proposed. I do remember reporting when Mat had stopped in to check on things, but I don't remember the details of these conversations. I was simply trying to keep it (and my concerns) on the Mayor's radar. (See Pages 15, 16, 19 of Exhibit 10) |
| October 11 | Mat also had stopped in to see the building owner shortly after the conclusion of the fair. The check in was to see if there were any updates and to make sure they didn't need anything from us. Mat received an update on the insurance status with a timeframe. |
| | There are discussions about removing the back wall so that a few parking spaces could be created. Mat provided the Architectural Standards for the Downtown Commercial Zoning District from the City's Unified Development Ordinance (See Exhibit 11). |
| | Mr. Bowers, unprompted, mentioned to Mat that he works with Mayor Ley drawing plans for his construction business. Mat reports this to me. We recall a project in the past couple of years where this is the case – Bowers Engineering drew up/stamped/received the State Permit and Signature Construction by Mike Ley pulled the Building Permits and completed construction. |
| | In preparation for our October 12 Plan Commission meeting, I had a phone call with Eugene (Gene) Bosworth, the Assistant City Attorney. Somehow, the conversation naturally led itself to this situation. I asked Gene if he'd heard about the collapse. I told Gene– that I was concerned; the collapse; open to the elements; no updates or progress; no support or answers from the City Attorney despite me asking for confirmation to be removed from that responsibility since I wasn't permitted to make the decision. Gene just listened, which I appreciated. |

4

| After Oct 11-14 | I contact Sandi Cobble, my local insurance agent about a one million dollar umbrella liability policy for myself. I do not disclose the reason for the policy – only trying to ask vague questions about its coverage. We have a swimming pool at our house, and I referenced that. I had her quote the policy; signed for it; and paid the premium. (See Exhibit 12) |
|---|---|
| Mid October | I am continually debating whether to just disregard the Mayor's orders and issue an Order to Vacate. Chapter 159 has an appeal process that is very straightforward and designed for owners to appeal the Order to Vacate to a Board of Appeals (comprised of the Mayor and two of his appointees). If the Board wishes to overturn my order, they have the authority to do so. |
| | This is further complicated by the fact that the City is enforcing Chapter 159 – Dangerous Buildings on a property at 418 / 414 S. Main Street. Orders to Vacate and Vacate and Repair have been issued here. And, nothing has been done, so the I was instructed to prepare an Order to Demolish, which was ready in August, but is now waiting for the Mayor/Erik to decide what they want to do (again…not part of the legal process). This building at 418/414 is not collapsing but has had substantial other issues. |
| October 19 | I am a wreck. I finally disclose everything to my doctor. Since I'm taking anti-anxiety pills every time I have to interact with Mayor Ley, my doctor prescribes anti-depressants, as well. |
| November 11 | There is no change. No updates. No nothing. I am concerned one of the exposed walls is beginning to sag more. There are daily freeze-thaw cycles that are a concern. A picture was snapped for reference. (See Exhibit 13. Red circle shows area of concern.) |
| November 15 | I send an email to the building owner asking for a status update since it had been 8 weeks since the collapse. (See Exhibit 14.) After a couple of days, Mat and I stop in to check on things. (See Exhibit 9 – Case Notes) |
| | We can see from the renders he showed on his computer that he is planning vertical metal siding on the building, which we know is not in compliance with the Downtown Commercial Architectural Standards, but we don't comment. |
| November 17 | We are contacted by the insurance adjuster as the front façade of the building has issues. The insurance person is trying to determine if the damage to the front façade was caused by the collapse. See Exhibit 15 for the recording of this phone call. |
| December 5 | During my regular Monday meeting with the Mayor, I ask if Mayor has had any conversations with Mr. Bowers. Mayor reports that Bowers is finalizing plans for the inside and outside and has already ordered new windows. (See Page 21 of Exhibit 10) |

5

| December 11 | It was a very cold and windy weekend day. Windy days always concerned me so we often drive by. On this day, there was active demolition at 121 S Main Street. No demolition permits were applied for or issued. There are thresholds of when demolition permits are required, and I'm not sure if this met those thresholds. I did not check since rules don't seem to apply to this situation. (See Exhibit 16) |
|---|---|
| December 21 | There is now construction going on at 121 S Main Street. No permits were applied for or issued. (See Exhibit 17). We feel powerless to uphold the law and uphold the standards required for everyone else. |
| December 27, 2021 – 10 AM | Mat Snyder provides his resignation letter to me. His letter states that he can't, in good conscience, continue to work under the Ley Administration. I reluctantly accept his decision and understand. Mat plans to work until January 8, 2022. (I do not have a copy of this letter to provide.) |
| December 27, 2021 – 2 PM | I am terminated and escorted to my office to clean it out. The news traveled fast, and Mat turned in his city property and left for good while I was cleaning out my office. (See Exhibit 18) |
| But wait, there's more... | |
| December 28 | Mayor Ley assumes the responsibilities of the Building Inspector including building plan review, signing off on permits, and building inspections. |
| January 7, 2022 | Mayor calls a meeting with Jennifer Barclay, Auburn City Planner with Mr. Bowers. Bowers comments how difficult our department is to work with, and we do not know how to review plans. |
| | Bowers provides plans to Mayor Ley for 121 S Main. Mayor Ley gives plans to Jennifer and asks for all review comments to be returned to Ley. |
| | Jennifer communicates to me she feels like it's a test to see if she's going to follow the rules. Barclay has the conversation recorded. I've not heard it, but could probably get a copy if necessary. |
| | |

There was a newspaper article about the partial collapse. I'll try to get a copy of it, but am having trouble with my newspaper getting me on online log in.

6

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Amy Schweitzer<br>1302 Prestwick Way<br>Auburn, IN 46706 | From: | Indianapolis District Office<br>101 West Ohio Street, Suite 1900<br>Indianapolis, IN 46204 |
|---|---|---|---|

| EEOC Charge No.<br>470-2022-01636 | EEOC Representative<br>**Frederick BruBaker,**<br>frederick.brubaker@eeoc.gov | Telephone No.<br>(463) 999-1148 |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    More than 180 days have passed since the filing of this charge.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Michelle Eisele
08/31/2022

Enclosures(s)

**Michelle Eisele**
**District Director**

cc: City of Auburn Indiana
    c/o Erik Weber
    210 East Ninth Street
    P.O. Box 506
    Auburn, IN 46706

    Christopher C Myers
    Myers Smith Wallace, LLP
    809 South Calhoun Street
    Suite 40
    Fort Wayne, IN 46802

Ex. C